## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

United States of America,

Plaintiff,

v.

Kelvin Joel Rivas-Quiñones

Defendant.

**Crim. No. 23-353-23 (GMM)**

### OPINION AND ORDER

Pending before the Court is Defendant Kelvin Joel Rivas-Quiñones's ("Rivas") *Amended Motion to Dismiss the Indictment Predicated on Double Jeopardy Grounds* ("*Amended Motion to Dismiss*"). (Docket No. 1269).[1] Rivas moves to dismiss the *Indictment* on double jeopardy grounds. He alleges that - prior to being indicted by a federal Grand Jury - he had been previously convicted and sentenced in Puerto Rico state court for the criminal offenses of conspiracy and possession, which are allegedly premised upon the same conduct and nucleus of operative facts.

For the reasons stated below, the Court **DENIES** Rivas's *Amended Motion to Dismiss*.

---

[1] The *Amended Motion to Dismiss* pending before the Court supersedes Rivas' prior filing of a *Motion to Dismiss Count One of the Indictment Predicated on Double Jeopardy Grounds*, (Docket No. 764), and *Corrected Motion to Dismiss Count One of the Indictment Predicated on Double Jeopardy Grounds*. (Docket No.766).

Crim. No. 23-353-23 (GMM)
Page - 2 -

## I.    BACKGROUND

The following factual allegations are taken from the *Indictment* and motions filed by the parties - and remain undisputed. *See* (Docket Nos. 3, 764, 1422).

On July 28, 2021, agents from the Puerto Rico Police Bureau arrested Rivas for alleged criminal activity in the municipality of Manatí. Puerto Rico authorities charged Rivas with four counts of violating Article 401(a)(2) of the Puerto Rico Controlled Substances Act, 24 L.P.R.A. § 2401(a)(2) ("Article 401"), which charges "possession with the intent to distribute controlled substances" – namely, marijuana, heroin, cocaine, and crack. (Docket No. 1422-1 at 1, 7, 13, 19).

Thereafter, Rivas entered a guilty plea with the Commonwealth, by which the four charges of possession with intent to distribute pursuant to Article 401 were reclassified to four conspiracy charges pursuant to Article 406 of the Puerto Rico Controlled Substances Act, 24 L.P.R.A. § 2406 ("Article 406"). Consequently, on April 1, 2022, Rivas was convicted in the Puerto Rico state court for four counts of conspiracy to possess or distribute controlled substances – specifically, marijuana, heroin, cocaine, and crack - in cases identified as CSC2021G0174 through CSC2021G0177. (Id. at 3-4, 9-10, 15-16, 23-24). These are

Crim. No. 23-353-23 (GMM)
Page - 3 -

the state court convictions that resulted from Rivas's arrest on
July 28, 2021.

Notably, Rivas was originally charged with four counts under
Article 401 for possession of marijuana, cocaine, crack, and heroin
with the intent to distribute. However, the offenses were later
reclassified to four lesser charges under Article 406 for
conspiracy. As a result, the Puerto Rico Court of First Instance
sentenced Rivas to six years of imprisonment on each charge, to be
served concurrently, for violating Article 406 by engaging in a
drug conspiracy. (Id.). At sentencing, however, Rivas's six-year
term of imprisonment was suspended and converted into probation
pursuant to Act No. 259 of April 3, 1946, as amended, 34 L.P.R.A.
§§ 1026 *et seq.* (Id.).

On April 11, 2023, Puerto Rico authorities detained Rivas for
violating Article 404 of the Puerto Rico Controlled Substances
Act, 24 L.P.R.A. § 2404 ("Article 404"). It charged him with simple
possession of a controlled substance. (Id. at 5, 12, 17, 21). On
that same date, the Puerto Rico state court revoked Rivas's
probation regarding his four conspiracy convictions, and Rivas was
sentenced to serve six years of imprisonment. (Id.).

On September 20, 2023, a grand jury in the District of Puerto
Rico returned an *Indictment*. It charged Rivas with six counts.
(Docket No. 3). Count One charges Rivas of conspiring with forty-

Crim. No. 23-353-23 (GMM)
Page - 4 -

one (41) named individuals, and others, to possess with intent to distribute controlled substances – heroin, fentanyl, cocaine, crack, marijuana, Tramadol, and Clonazepam - within 1,000 feet of the Enrique Zorrilla Public Housing Project, Villa Evangelina Public Housing Project, Vivamery Public Housing Project, and Los Murales Public Housing Project, and other areas, in violation of 21 U.S.C. §§ 841, 846, and 860. (Id. at 4-13). Count Two charges Rivas with aiding and abetting in the Possession/Distribution of Heroin, in violation of 21 U.S.C. § 841 and 860 and 18 U.S.C. § 2. (Id. at 13-15). Count Three charges Rivas with aiding and abetting in the Possession/Distribution of Cocaine Base (i.e., crack), in violation of 21 U.S.C. §§ 841 and 860, and 18 U.S.C. § 2. (Id. at 15-17). Count Four charges Rivas with aiding and abetting in the Possession/Distribution of Cocaine, in violation of 21 U.S.C. §§ 841 and 860, and 18 U.S.C. § 2. (Id. at 17-19). Count Five charges Rivas with aiding and abetting in the Possession/Distribution of Marijuana, in violation of 21 U.S.C. §§ 841 and 860, and 18 U.S.C. § 2. (Id. at 19-20). Count Six charges Rivas with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). (Id. at 20-21).

On January 31, 2025, Rivas filed a *Motion to Dismiss Count One of the Indictment Predicated on Double Jeopardy Grounds*. (Docket No. 764). Later, on February 4, 2025, Rivas filed a

Crim. No. 23-353-23 (GMM)
Page - 5 -

*Corrected Motion to Dismiss Count One of the Indictment Predicated on Double Jeopardy Grounds*. (Docket No. 766). Thereafter, on September 4, 2025, Rivas filed an *Amended Motion to Dismiss the Indictment Predicated on Double Jeopardy Grounds*. (Docket No. 1269). On September 30, 2025, the Government filed the *Government's Response to Defendant[']s Motions to Dismiss the Indictment Predicated on Double Jeopardy Grounds at DEs 764, 766, 1262 and 1269-1*. (Docket No. 1313). Rivas then filed a *Reply to USA Response in Opposition to Motion to Dismiss the Indictment* ("*Opposition*") on October 4, 2025. (Docket No. 1327). On October 6, 2025, a *Supplemental Reply to USA Response in Opposition to Motion to Dismiss the Indictment* was also filed by Rivas. (Docket No. 1330).

A.    Defendant's *Motion to Dismiss*

Rivas moves to dismiss the Indictment on double jeopardy grounds. He alleges that his four April 1, 2021, Puerto Rico state court convictions involve the same offenses for which he is currently being prosecuted in this Court. (Docket No. 1269 at 1). Specifically, Rivas argues that on April 1, 2022; after being charged in four counts of possession with intent to distribute marijuana, heroin, cocaine, and crack under Article 401, he pled guilty to four conspiracy charges in violation of Article 406 following the reclassification of the Article 401 offenses. (Id. at 3). Thereafter, on April 11, 2023, while serving his probation,

Crim. No. 23-353-23 (GMM)
Page - 6 -

Rivas was again detained for violating Article 404. (Id. at 4-5).
As a result, Rivas's probation was revoked and he was imprisoned
for the convicted offenses. (Id.).

As such, Rivas posits that double jeopardy applies because he
was charged with possession with intent to distribute under Article
404 and convicted of conspiracy under Article 406 in Puerto Rico
state court, he argues that he cannot be held criminally liable in
federal court for possession charges. (Id.).

Rivas references the First Circuit's ruling in United States
v. Reyes-Correa, 917 F.3d 6 (1st Cir. 2020), to bolster his
argument. He contends that Counts One through Five of the
Indictment must be dismissed under Reyes-Correa because the
"federal drug trafficking charges and the local statute proscribe
and punish the same conduct proscribed and punished by the Federal
Controlled Substances Act practically ad-verbatim." (Docket No.
1269 at 7). Rivas argues that the Puerto Rico state court's Article
401 possession charges and Article 406 conspiracy convictions
cover the same geographic and temporal scope as the federal
conspiracy and possession charges because—according to him—these
offenses occurred during the same time span and within the
municipality of Manatí. Rivas specifically notes that the Puerto
Rico conspiracy convictions overlap with the same time period,
geographic area, and drug trafficking scheme as the federal

Crim. No. 23-353-23 (GMM)
Page - 7 -

conspiracy and possession charges in the Indictment: that is, all relevant conduct in both the federal and state cases occurred from 2016 to September 20, 2023. (Docket No. 1327 at 2). Rivas also asserts that the evidence will show that "the packages used to distribute the drugs seized in the Puerto Rico case are similar or identical to those used by the asserted drug trafficking operation subject of the instant Indictment." (Id. at 4).

In addition, Rivas argues that as to Count Six—possession of a firearm in furtherance of a drug trafficking crime—if the remaining conspiracy and possession counts were to be dismissed, the Government would have no evidence to establish one of Count Six's requisite elements: that the firearm was possessed "in furtherance of a drug trafficking crime," absent an underlying drug offense. (Docket Nos. 1269 at 10; 1327 at 6).

B.  Government's *Opposition*

The Government concedes that —as to Count One of the Indictment, charging Rivas with conspiracy to possess with intent to distribute heroin, crack, cocaine, and marijuana— Puerto Rico's Article 406 and 21 U.S.C. § 846 ("Section 846") are statutes "from which a valid Double Jeopardy claim can arise." Nevertheless, it asserts that Rivas does not satisfy the five-factor test required to prove double jeopardy. (Docket No. 1313 at 5–7). Hence, the Government discusses this five-factor test to determine whether

Crim. No. 23-353-23 (GMM)
Page - 8 -

two conspiracies shall be treated as the same offense for purposes of double jeopardy—which entails a close examination of: the timing of the conspiracy; the individuals involved in the conspiracies; the location of the conspiracies; the evidence presented to sustain the conspiracy charge; and the elements of the applicable conspiracy statutes. (Id.) (citing United States v. Gómez-Pabón, 911 F.2d 847, 860-62 (1st Cir. 1990)). charging Rivas with conspiracy to possess with intent to distribute heroin, crack, cocaine, and marijuana—**Puerto Rico's Article 406 and 21 U.S.C. § 846 ("Section 846") are statutes "from which a valid Double Jeopardy claim can arise." Nevertheless, it asserts that Rivas does not satisfy the five-factor test required to prove double jeopardy. (Docket No. 1313 at 5-7). Hence, the Government discusses this five-factor test to determine whether two conspiracies shall be treated as the same offense for purposes of double jeopardy— which entails a close examination of: the timing of the conspiracy; the individuals involved in the conspiracies; the location of the conspiracies; the evidence presented to sustain the conspiracy charge; and the elements of the applicable conspiracy statutes. (Id.) (*citing* United States v. Gómez-Pabón, 911 F.2d 847, 860-62 (1st Cir. 1990)).

    As to the timeframe of the alleged conspiracies, the Government also acknowledges that Count One of the Indictment's

Crim. No. 23-353-23 (GMM)
Page - 9 -

conspiracy charges includes July 28, 2021, which is the arrest date corresponding to the Puerto Rico case conspiracy conviction. Hence, it concedes that there is some temporal overlap between the state and federal conspiracies, but that the federal conspiracy extends through a greater timeframe. The Government points to this, in addition to the existence of other material facts that distinguish and separate the four Article 406 conspiracy convictions from Count One's conspiracy charge—such as differences in individuals involved and locations—to support its argument against a double jeopardy finding. (Id. at 6).

Regarding the individuals involved in the state and federal conspiracies, the Government asserts that Rivas has failed to show that any of the co-defendants named in the federal Indictment were arrested, charged, or convicted by Puerto Rico authorities in relation to Rivas's prior state court cases, nor has Rivas shown that he conspired with any of the other federal co-defendants as part of his Article 401 possession charges and Article 406 conspiracy convictions of April 1, 2022. (Id.).

As to the locations of both conspiracies, the Government recognizes that Rivas's July 18, 2021 arrest by Puerto Rico authorities in relation to the Article 401 charges and Article 406 convictions led to the filing of charges in Arecibo, referring to the Court of First Instance of Arecibo. (Id.) However, the

Crim. No. 23-353-23 (GMM)
Page - 10 -

Government argues that Rivas failed to allege that this arrest "took place in a location tied to the conspiracy alleged in the instant case." (Id.) The Government further posits that, according to the Pretrial Services Report ("PSR"), Rivas reported to the state probation office with a fanny pack containing drugs, conduct which led to the revocation of Rivas's probation and subsequent imprisonment. Thus, the Government asserts that the "state probation office is not a place controlled by the Drug Trafficking Organization ('DTO')." (Id.).

With respect to the Government's evidence to prove the federal conspiracy count, the Government contends that it is unaware of the evidence that was used by local prosecutors at the Puerto Rico state court to prove Rivas's participation in the Article 406 conspiracy. (Id. at 6-7). To establish the conspiracy, the Government will present cooperators who will testify that Rivas belonged to the drug trafficking organization known as "Hasta Los Marcian" and that Rivas participated in furthering the sale of narcotics in the Manatí and Arecibo areas of Puerto Rico. (Id.). Also, the Government intends to present Defendant's prior history of arrests, including the July 18, 2021 arrest that led to his Article 401 charges and Article 406 convictions, as the Government concedes that this arrest is relevant conduct to Count One's conspiracy charge in the instant case. (Id.).

Crim. No. 23-353-23 (GMM)
Page - 11 -

Finally, as to the statutory provisions applicable to the state and federal conspiracies, the Government argues that both Article 406 and Section 846 contemplate the same offense: conspiracy to possess with intent to distribute controlled substances. Specifically, on April 1, 2022, Rivas was convicted in Puerto Rico state court for four counts of conspiring to possess with intent to distribute marijuana, cocaine, crack, and heroin pursuant to Article 406. However, these state court convictions do not include conspiracy to possess with intent to distribute fentanyl, Clonazepam, and Tramadol, which are charged in Count One of the *Indictment*. (Id. at 7).

As to Counts Two to Five of the Indictment, charging Rivas with possession of heroin, crack, cocaine, and marijuana with the intent to distribute, pursuant to 21 U.S.C. § 841 ("Section 841"), the Government argues that Article 406 and Section 841 each necessitate proving an element that the other statute does not require. Particularly, Article 406 —of which Rivas was convicted in Puerto Rico state court— requires proof of a conspiracy, but Section 841 does not; Section 841 —of which Rivas is being charged in Counts Two to Five of the Indictment— requires either proof of actual possession or proof of aiding and abetting actual possession, while Article 406 does not. Having distinct elements,

Crim. No. 23-353-23 (GMM)
Page - 12 -

the Government thus claims that the two offenses are distinct for double jeopardy purposes. (Id. at 7-8).

Furthermore, as to Count Six of the Indictment, the Government posits that even if Rivas were correct that all drug-related charges should be dismissed, this would not imply the dismissal of the 18 U.S.C. § 924(c) ("Section 924") charge, as the statute does not require that the requisite underlying drug offenses be charged in the same indictment. (Id. at 8).

## II.  APPLICABLE LAW

A.    Motions to Dismiss an Indictment

Rule 12(b)(2) of the Federal Rules of Criminal Procedure enables a defendant to file a motion to dismiss for lack of jurisdiction, "at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). Under Rule 12(b)(3)(A) a defendant may file a pretrial motion to dismiss for a non-exhaustive list of reasons, including double jeopardy. Fed. R. Crim. P. 12(b)(3)(A).

"[D]ismissing an indictment is an extraordinary step." United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000) (quoting United States v. Stokes, 124 F.3d 39, 44 (1st Cir. 1997)). Considering that the dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," the district courts shall remain mindful that they "should exercise [their] authority to dismiss cautiously." United States v. Thomas, 519 F. Supp. 2d 141,

Crim. No. 23-353-23 (GMM)
Page - 13 -

143-44 (D. Me. 2007) (*quoting* <u>Whitehouse v. U.S. Dist. Ct.</u>, 53 F.3d 1349, 1360 (1st Cir. 1995)). "For this reason, unlike a complaint initiating a civil action, 'an indictment is not generally subject to dispositive motion practice.'" <u>United States v. Ayotte</u>, 841 F. Supp. 2d 398, 403 (D. Me. 2012) (*quoting* <u>United States v. Poulin</u>, 645 F. Supp. 2d 17, 22 (D. Me. 2009)). Hence, dismissal of an indictment "is appropriately reserved . . . for extremely limited circumstances." <u>Whitehouse</u>, 53 F.3d at 1360 (1st Cir. 1995) (*citing* <u>Bank of N.S. v. United States</u>, 487 U.S. 250, 263 (1988)).

B.    <u>Double Jeopardy</u>

Under the Fifth Amendment, no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Am. V. "The Double Jeopardy Clause of the Fifth Amendment [to the United States Constitution] prohibits more than one prosecution for the 'same offence'" where the prosecution is brought by the same sovereign. <u>Reyes-Correa</u>, 971 F.3d at 9 (alteration in original) (*quoting* <u>Puerto Rico v. Sánchez Valle</u>, 579 U.S. 59, 62 (2015)). A state and the federal government, as separate sovereigns, may successively try a defendant for the same offense without violating double jeopardy. <u>Id.</u>; <u>Gamble v. United States</u>, 587 U.S. 678, 681 (2019) (describing the dual-sovereignty doctrine). This rule, however, does not apply to successive

Crim. No. 23-353-23 (GMM)
Page - 14 -

prosecutions brought by the United States and Puerto Rico, because they are one single sovereign for double jeopardy purposes. Sánchez Valle, 579 U.S. at 78. Thus, the United States and Puerto Rico "may not 'successively prosecute a single defendant for the same'" offense. Reyes-Correa, 971 F.3d at 9 (*quoting* Sánchez Valle, 579 U.S. at 62); *see also* Rodríguez-Méndez v. United States, 134 F.4th 1, 5 (1st Cir. 2025).

The seminal double jeopardy case from the Supreme Court is Blockburger v. United States, 284 U.S. 299 (1932). In Blockburger, the Supreme Court described the proper analysis to evaluate a double jeopardy claim: "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304; *see also* United States v. Stefanidakis, 678 F.3d 96, 100 (1st Cir. 2012) ("Blockburger . . . prohibits charging the same conduct under two separate statutes unless each statute requires proof of a fact that that other does not.").

To determine whether the two drug-trafficking conspiracies constitute the same offense for the purpose of double jeopardy, the First Circuit has identified five factors that must be considered: "(a) the time during which the activities occurred; (b) the persons involved; (c) the places involved; (d) whether the same evidence was used to prove the two conspiracies; and (e)

Crim. No. 23-353-23 (GMM)
Page - 15 -

whether the same statutory provision was involved in both conspiracies." Gómez-Pabón, 911 F.2d at 860. In considering these factors, courts must remember that this evaluation process is a "pragmatic" test, rather than a rigid checklist. United States v. Fenton, 367 F.3d 14, 19 (1st Cir. 2004). Such pragmatism is meant to combat the "ease with which prosecutors can draft indictments that allege what may appear to be separate conspiracies but may actually be parts of an overall conspiracy." United States v. Garcia-Rosa, 876 F.2d 209, 228 (1st Cir. 1989), *vacated on other grounds by* Grady v. Corbin, 495 U.S. 508 (1990). The overriding consideration, thus, is whether there was "a single agreement to commit one or more substantive crimes" or multiple separate agreements. Braverman v. United States, 317 U.S. 49, 53 (1942).

In addition to this five-part test, the First Circuit has identified additional relevant factors. Among them, the First Circuit has considered whether a defendant "played a different role in each conspiracy." United States v. Pérez-González, 967 F.3d 53, 56 (1st Cir. 2020). In addition, it has examined whether the conspiracies had different "aim[s]," observing that the Supreme Court itself has "deem[ed] two conspiracies facially distinct in part because they 'embraced separate objectives.'" Id. at 56 (*quoting* United States v. Broce, 488 U.S. 563, 571 (1989)).

Crim. No. 23-353-23 (GMM)
Page - 16 -

"Differences in participants, places, objectives, times, and conduct all may bear on the question of whether two charged conspiracies are factually distinct, such that they are not for the same offense for double jeopardy purposes even though the statutory offense charged is the same as a legal matter." Reyes-Correa, 971 F.3d at 12 (citing Pérez-González, 967 F.3d at 56; United States v. Laguna-Estela, 394 F.3d 54, 57-59 (1st Cir. 2005); Broce, 488 U.S. at 570-71). "[T]he fact that there is some factual overlap between two charged conspiracies does not, in and of itself, preclude a determination that they are factually distinct for double jeopardy purposes." Id. Furthermore, "the same sovereign may not 'carv[e] up a single conspiracy to commit several crimes into separate prosecutions' and thereby create distinct offenses that may be prosecuted successively." Id. (quoting United States v. Booth, 673 F.2d 27, 29 (1st Cir. 1992)).

Ultimately, "[a] defendant claiming double jeopardy has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim. Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments charge separate offenses." Id. at 10 (quoting Booth, 673 F.2d 27 at 30).

Crim. No. 23-353-23 (GMM)
Page - 17 -

### III. ANALYSIS

A.    Defendant's *Prima Facie* Burden

In asserting his double jeopardy claim, Rivas asserts that his four Article 406 convictions in the Puerto Rico state court rest upon the same conduct and nucleus of operative facts as the current federal charge included in Count One of the *Indictment*. (Docket No. 1269).

Defendant bears the burden of making this showing by "demonstrating sufficient facts of similarity between separately charged conspiracies [as] to put [the defendant's] double jeopardy rights in issue." United States v. DelVecchio, 800 F.2d 21, 22 (2d Cir. 1986); *see also* Grady, 495 U.S. at 523 n.14, *overruled on other grounds by* United States v. Dixon, 509 U.S. 688 (1993).

Thus, the Court first examines the Puerto Rico state court proceedings. According to the translations submitted by Rivas, on July 28, 2021 he was charged with four felony offenses in violation of Article 401. The Puerto Rico state court accusation in CSC22160174 charges as follows:

> The above-captioned defendant, on or about March 9, 2021, and in Manati, which is part of the Court of First Instance, Arecibo Part, illegally, voluntarily, and criminally had and possessed with the intention of distributing the controlled substance known as **marijuana**, without legal authorization to do so. Consisting of one clear zip-lock plastic bag containing 52 clear zip-lock plastic baggies of different sizes, containing **marijuana** shavings (10 of these were green in color, 12 were stapled, and 18 had different logos) and

Crim. No. 23-353-23 (GMM)
Page - 18 -

> a clear plastic zip-lock bag, green in color, containing
> 7 clear plastic containers with white lids and adhesive
> tape, containing marijuana shavings.

(Docket No. 1422-1 at 1) (emphasis added).

In a similar manner, the Puerto Rico state court accusation

in CSC22160175 charges as follows:

> The above-captioned defendant, on or about March 9,
> 2021, and in Manati, which is part of the Court of First
> Instance, Arecibo Part, illegally, voluntarily, and
> criminally had and possessed with the intention of
> distributing the controlled substance known as **heroin**,
> without legal authorization to do so. Consisting of one
> clear zip-lock bag of a green color, containing 73 foil
> paper wrappings in different colors and folded like a
> tamale containing **Heroin** powder.

(Id. at 7) (emphasis added).

Similarly, the Puerto Rico state court accusation in

CSC22160176 charges as follows:

> The above-captioned defendant, on or about March 9,
> 2021, and in Manati, which is part of the Court of First
> Instance, Arecibo Part, illegally, voluntarily, and
> criminally had and possessed with the intention of
> distributing the controlled substance known as cocaine,
> without legal authorization to do so. Consisting of one
> clear zip-lock bag containing 54 clear plastic zip-lock
> baggies, containing cocaine powder and pebbles (**Crack**)
> and one clear zip-lock bag containing 71 clear plastic
> zip-lock baggies containing cocaine pow[d]er (10 green
> in color, stapled, and Heineken logo, 37 stapled with
> Boston logo, 3 stapled with Minions logo[)].

(Id. at 13) (emphasis added).

The Puerto Rico state court accusation in CSC22160177 charges

as follows:

Crim. No. 23-353-23 (GMM)
Page - 19 -

> The above-captioned defendant, on or about March 9, 2021, and in Manati, which is part of the Court of First Instance, Arecibo Part, illegally, voluntarily, and criminally distributed to Elias Aguirre Rojas and to Juan E. Perez Torres the controlled substance known as **cocaine**, without legal authorization to do so. Consisting of one clear zip-lock plastic baggie with white **Cocaine** powder.

(Id. at 19) (emphasis added).

In support of his *Amended Motion to Dismiss*, Rivas submitted the judgments rendered for each of these Article 401 charges, which reflect that on April 1, 2022, he was sentenced to six years of imprisonment for each charge, to run concurrently. The aforementioned charges were reclassified by way of a guilty plea; thus, Rivas was ultimately convicted for the "modality of conspiracy to distribute" pursuant to Article 406. (Id. at 3-4; 9-10; 15-16; 23-25). These judgments, however, do not show the facts surrounding the offense and conviction; nor was the plea agreement reached with the local prosecutors submitted to this Court. *See* (Id.). In addition, Rivas also submitted the subsequent Puerto Rico state court judgments revoking his probation sentence and imposing imprisonment. (Id. at 5, 12, 17, 21). Rivas did not submit any additional records from the Puerto Rico state court regarding these cases.

Having provided a complete factual and procedural background, the Court thus will now apply the First Circuit factors to the facts and record before it.

Crim. No. 23-353-23 (GMM)
Page - 20 -

1.  Timing

The Court first examines the time in which the activities regarding the two conspiracies allegedly occurred. Rivas was originally charged, on July 28, 2021, with four violations of Article 401 for possession with the intent to distribute that were committed on March 9, 2021. On December 9, 2021, Rivas pled guilty to the reclassified offenses and was convicted of four conspiracy counts under Article 406. Rivas was then sentenced on April 1, 2022, to six years of probation.

Contrary to the state criminal procedures, the conspiracy alleged in the current *Indictment* spans from 2016 until September 20, 2023. That is, ab out 22 months after entering his guilty plea for the Puerto Rico law offenses, Rivas was named in the federal *Indictment* before this Court.

Certainly, the timespan that encompasses Rivas's Puerto Rico state court arrest, charges, and convictions fit within the time range that is alleged in Count One of the *Indictment*. However, the documents before the Court do not indicate during what span of time the actus reus that give rise to the conspiracy offenses took place. Nor has Rivas met his prima facie burden of setting forth evidence regarding the time span of the local conspiracy convictions.

Crim. No. 23-353-23 (GMM)
Page - 21 -

What the Court has before it, however, are the following facts: The state convictions for conspiracy offenses are premised upon the reclassification of the possession with the intent to distribute offenses; and, per the Puerto Rico state court accusations, the possession with the intent to distribute offenses date to March 9, 2021. Hence, from the evidence presented by Rivas to this Court, and upon evaluating the underlying facts that gave rise to Rivas's Puerto Rico conspiracy convictions, the Court can infer that the state-level conspiracy offenses occurred on a date prior to March 9, 2021. Count One of the *Indictment*, in turn, indicates that the federal conspiracy offense occurred "[f]rom in or about the year 2016." (Docket No. 3 at 4).

That is to say, the record shows that Rivas's state-court convictions began on a different date. The starting date of these two distinct conspiracies are separated by a 7-year period. The conspiracies also ended on different dates: the state-level conspiracy ended with Rivas's July 2021 arrest and the federal level ended with the September 2023 *Indictment*. The conspiracies merely overlapped for about twenty-two months at most. *See* United States v. Collazo-Aponte, 216 F.3d 163, 198 (1st Cir. 2000) (holding two conspiracies to be distinct, in part because they "involve[d] different time periods" despite a year-long overlap);

Crim. No. 23-353-23 (GMM)
Page - 22 -

*see also* <u>Broce</u>, 488 U.S. at 570 (looking at the different start dates of conspiracies to find them facially distinct).

When a defendant alleges double jeopardy on the basis of two conspiracy offenses that overlap, the timing factor has been found to be tipped against dismissing an indictment, since "the short period of time separating the conspiracies does not preclude a determination that the conspiracies were indeed separate." <u>United States v. Diaz-Rosado</u>, No. 13-CR-573 (FAB/BJM), 2016 WL 9443748, at *4 (D.P.R. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 9443749 (D.P.R. Apr. 26, 2016) (*quoting* <u>United States v. Ziskin</u>, 360 F.3d 934, 945 (9th Cir. 2003)). Thus, this timing factor militates in favor of finding that the prior state-court conspiracy convictions and the current conspiracy charge under Count One are two distinct conspiracies – rather than a single offense – for purposes of double jeopardy.

> 2.  <u>Persons Involved</u>

In addition to the temporal distinctions between the state-level conspiracy convictions and the federal-level conspiracy charge, a review of the offenses in question shows that these two separate conspiracies involved distinct participants. Specifically, in the *Indictment* before this Court, Rivas is charged together with forty-one other named co-defendants. *See* (Docket No. 3). The Government correctly points out that Rivas failed to show

Crim. No. 23-353-23 (GMM)
Page - 23 -

that any of these co-defendants named in the *Indictment* were also arrested, charged, or convicted in Rivas's prior Puerto Rico cases; nor has Rivas shown that he conspired with any of these same individuals as part of the state court conspiracy convictions.

Further, the record is devoid of facts or evidence put forth by Rivas that would indicate who the other participants of the Puerto Rico conspiracy convictions were. Aside from mentioning Rivas, the translations of the state court accusations for violations to Article 401 – which is the possession with the intent to distribute offense, rather than conspiracy offense - mention only two other individuals: Elias Aguirre Rojas and Juan E. Pérez Torres. (Docket No. 1422-1 at 19). As reflected in the record, neither of these two named individuals participated in the Article 406 conspiracy convictions – which is the offense relevant for double jeopardy purposes – but rather are named merely as two persons to whom Rivas supplied cocaine. *See* (id.). Notably, neither of these two individuals are named in the *Indictment* before this Court for any of the charged federal offenses. Because, on the face of the record, the persons involved in the 2021 local cases appear to be different than those involved in the 2016-2023 federal *Indictment*, this factor again suggests the existence of two distinct conspiracies.

   3.   <u>Locations</u>

Crim. No. 23-353-23 (GMM)
Page - 24 -

While the third factor -the places involved- is a close call, it ultimately tips against Rivas. The translations related to Rivas's previous Puerto Rico cases reflect that the acts that gave rise to the Article 401 charges and, subsequently, the Article 406 convictions, took place in the municipality of Manatí. (Id. at 1, 7, 13, 19). Rather than specifying a particular location, the documents merely state "Committed in: Manatí, PR." (Id.)

In contrast, the Indictment alleges that the Count One conspiracy took place "in the [m]unicipality of Manatí and areas nearby," and it specifically identifies various public housing projects: the Enrique Zorrilla Public Housing Project, the Villa Evangelina Public Housing Project, the Vivamery Public Housing Project, and the Los Murales Public Housing Project. (Docket No. 3 at 3, 6). The Indictment also states that the Drug Trafficking Organization known as "Hasta Los Marcian" operated in and near Manatí, Puerto Rico, including but not limited to the public housing projects, as well as Cerro Gandia Ward and the Morovis cemetery. None of those public housing projects or additional locations are mentioned as part of the conspiracy offenses for which Rivas was convicted in the Puerto Rico state court.

Furthermore – and distinguishable from Reyes-Correa, which Rivas cites in support of his *Amended Motion to Dismiss* - the conspiracy offenses in the Puerto Rico state court do not mention

Crim. No. 23-353-23 (GMM)
Page - 25 -

any public housing project or protected location, nor do Rivas's allegations point that the state-level conspiracy offenses also occurred at a public housing projects.[2] On the contrary, the record reflects that the different conspiracies occurred at different locations. As the Government posits, and as reflected in the PSR, Rivas was arrested when he reported to the Puerto Rico Probation Office with a fanny pack that contained drugs inside. (Docket No. 198 at 3). As a result, new charges for simple possession of controlled substances were filed against Rivas and his probation term imposed by the Puerto Rico state court was revoked, thus resulting in Rivas's imprisonment. (Id.). The Government contends that the State Probation Office is not a place controlled by the Drug Trafficking Organization involved in the *Indictment* in this case, which indicates the two places are distinct to each conspiracy.

Certainly, in this case the geographic scope of both conspiracies appears to overlap because they both took place in the municipality of Manatí. However, Rivas has not put forth sufficient facts of similarity between the precise locations involved the Puerto Rico state court conspiracy offenses vis a vis

---

[2] Notably, Reyes-Correa involved a federal drug conspiracy prosecution against a defendant who had earlier pled guilty in a case brought by the Commonwealth of Puerto Rico based on two crack transactions **at a particular housing project,** on two days in November 2015. 971 F.3d at 8-9. (emphasis added). This stark factual difference certainly impacts the Court's double jeopardy analysis.

Crim. No. 23-353-23 (GMM)
Page - 26 -

the protected public housing locations; nor has he demonstrated the existence of circumstances that link the two conspiracies so the Court can infer that there is a substantial overlap in locations.

    4.  <u>Evidence</u>

To the extent Rivas is arguing that the state and federal conspiracy offenses are not separate because they rely on the same evidence, that is incorrect. "[T]he <u>Blockburger</u> rule depends on statutory analysis, not on evidentiary comparisons." <u>United States v. Morris</u>, 99 F.3d 476, 479 (1st Cir. 1996); *see also* <u>United States v. Lanoue</u>, 137 F.3d 656, 661 (1st Cir. 1998) ("The <u>Blockburger</u> test looks to the elements of each offense rather than to the evidence used to prove these elements."); <u>United States v. Sepulveda</u>, 102 F.3d 1313, 1316 (1st Cir. 1996) ("[A] defendant can be convicted of two differently defined offenses, based on the same core of facts, so long as each offense requires an element that the other does not.").

The evidence on which the Government plans to rely on to prove the elements of Count One involves the testimony of cooperators who would testify that Rivas belonged to "Hasta Los Marcian" and that Rivas participated in furthering the sale of narcotics in the Manatí and Arecibo areas of Puerto Rico. (Docket No. 1313 at 5-7). The Government concedes that the conduct that formed the basis

Crim. No. 23-353-23 (GMM)
Page - 27 -

of Rivas's Article 406 convictions is "relevant conduct" to the
federal Section 846 charge and, thus, the evidence grounding the
Puerto Rico conspiracy convictions would also be evidence
supporting his conviction on the federal Count One charge. (Id.).

However, the record does not reflect which precise evidence
was used to support Rivas's conviction in the Puerto Rico state
court case. Rivas merely alleges that drugs seized during his
arrest on March 9, 2021 were composed of those exactly being
charged in the federal *Indictment* - that is, heroin, crack,
cocaine, and marijuana - and that he will be able to prove that
the packages used to distribute the drugs seized are similar or
identical because of their appearance, nature, and
characteristics, to those used by the asserted drug-trafficking
operation in the *Indictment*. (Docket No. 1269 at 4). However, aside
from these speculative allegations, there is no evidence on the
record to make this showing. Such allegations without more, carry
little weight, as they seem like descriptions based on commonplace
characteristics in these type of drug-trafficking crimes.
Remarkably, the drug amounts and the descriptions the packaging
charged in the Puerto Rico case are different than those included
in the federal conspiracy and Rivas puts forth no allegations as
to what makes them similar so as to point to the same conspiracy.

Crim. No. 23-353-23 (GMM)
Page - 28 -

(Docket Nos. 3 at 8; 1422-1). Hence, this factor is even for both parties, but tilts slightly in favor of the Government.

### a. Objective of the conspiracies

As to this evidence prong, the First Circuit considers additional relevant factors, like whether a defendant "played a different role in each conspiracy." Pérez-González, 967 F.3d at 56. The First Circuit also examines whether the conspiracies had different "aim[s]," hence observing that the Supreme Court has "deem[ed] two conspiracies facially distinct in part because they 'embraced separate objectives.'" Id. (*citing* Broce, 488 U.S. at 571).

Here, the *Indictment* clearly states that the object of the conspiracy was to "operate a drug-trafficking organization (DTO) to distribute controlled substances in the Municipality of Manatí and areas nearby, all for significant financial gain and profit." (Docket No. 3 at 7). The *Indictment* adds that the goal was to "maintain control of all the drug-trafficking activities within Manatí and nearby areas by use of force, threats, violence and intimidation." (Id.). Notably, the objectives or goals of the Puerto Rico case are unknown. The record only reflects that Rivas possessed with intent to distribute controlled substances - marijuana, cocaine, crack, and heroin. Rivas has not put forth any

Crim. No. 23-353-23 (GMM)
Page - 29 -

evidence that shows that the conspiracy in the Puerto Rico case
also involved the "Hasta Los Marcian" or that his acts were part
of the drug-trafficking organization's objectives and the same
conspiracy.

Again, Rivas merely submitted the charging documents
regarding the Article 401 possession with intent to distribute
charges and corresponding judgments for the Article 406 conspiracy
convictions – without submitting other documentation that would
support his posture or reveal additional details about the offenses
in question, such as a copy of Rivas's plea agreement with local
prosecutors. Since these Article 401 charges were reclassified to
Article 406 conspiracy charges, the record is devoid of any facts
or evidence regarding the latter state-level conspiracy. Moreover,
Rivas has not submitted the Puerto Rico plea colloquy, nor has he
submitted other stipulated facts supporting his previous
conspiracy conviction, to show the object of the conspiracy and/or
to demonstrate that these latter convictions are related to the
same conspiracy as that charged in Count One.

In examining the objectives of the conspiracies, the Court
stresses that, while the federal conspiracy charged in Count One
of the *Indictment* related to the possession with intent to
distribute all the same drugs as were involved in the state
conspiracy in the Puerto Rico case — cocaine, crack, heroin, and

Crim. No. 23-353-23 (GMM)
Page - 30 -

marijuana, the federal charges also involve possession with intent
to distribute three additional drugs — fentanyl, Clonazepam, and
Tramadol, which were not identified in the Puerto Rico case. *See*
(Docket No. 3). That is to say, the federal conspiracy expanded
wider than the state conspiracy.

The mere fact that the Government will deem "relevant conduct"
the charges before the Puerto Rico State Court hardly alters the
analysis and does not point to the charges constituting the same
conspiracy. Thus, there is a minimal evidentiary overlap between
the different conspiracy offenses but, to be sure, not enough
overlap to conflate the separate conspiracies.

     5.   <u>Charging Statutes</u>

Lastly, as part of the pertinent five-part test, the Court
must examine whether the statutory provisions for the state and
federal offenses contain overlapping elements. *See* <u>Blockburger</u>,
284 U.S. at 304 ("The applicable rule is that where the same act
or transaction constitutes a violation of two distinct statutory
provisions, the test to be applied to determine whether there are
two offenses or only one, is whether each provision requires proof
of a fact which the other does not.").

     1.   <u>Elements of Count One of the *Indictment*</u>

Article 406 criminalizes an attempt or conspiracy to commit
a controlled substance offense. Specifically, Article 406

Crim. No. 23-353-23 (GMM)
Page - 31 -

establishes penalties for "[a]ny person who . . . conspires to commit any offense defined in this chapter." 24 L.P.R.A. § 2406. On the other hand, Section 846 establishes penalties for "[a]ny person who . . . conspires to commit any offense defined in this subchapter", 21 U.S.C. § 846. "In order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy." United States v. Shabani, 513 U.S. 10, 15 (1994).

Already conceded by the Government, as to the conspiracy charge in Count One of the *Indictment*, Section 846 contemplates the same crime and elements as Article 406. This final factor of the five-part test weighs in favor of Rivas, as to Count One of the *Indictment*.

## 2.    Elements of Counts Two to Five of the Indictment

Relevant to Rivas's double jeopardy claim is the offense of possession with the intent to distribute, charged in Counts Two to Five of the *Indictment*. Namely, Rivas contends in his *Amended Motion to Dismiss* that, because he has four convictions of Article 406 violations at the state level – and that these Article 406 convictions are based on the reclassification of substantive Article 401 violations which were dismissed– then Counts Two to Five of the *Indictment* for violations to Section 841 are, therefore, barred by double jeopardy. Stated plainly, Rivas

Crim. No. 23-353-23 (GMM)
Page - 32 -

contends that, because his state-level conspiracy convictions are premised upon state-level charges of possession with the intent to distribute, then the federal-level charges for possession with the intent to distribute constitute multiplicious prosecutions for the same offense.

However, Rivas cites no applicable or binding caselaw that supports this contention. (Id.). Notably and contrary to his averments, the case law points to the fact that double jeopardy only attaches as to the charge for which the defendant was ultimately convicted and not the underlying offense as to which he was originally charged and not tried for. *See generally* United States v. Suazo, 14 F.4th 70 (1st Cir. 2021) (ruling that a dismissal of an indictment without prejudice is not an adjudication on the merits that triggers double jeopardy protections).

Relevant here, Article 401 criminalizes, inter alia, distribution of a controlled substance, as well as possession of controlled substance with the intent to distribute it. *See* United States v. Torres-Santana, 991 F.3d 257, 259 (1st Cir. 2021). Specifically, as to Article 401, "it shall be unlawful for any person knowingly or intentionally . . . [t]o . . . possess with the intent to . . . distribute . . . a controlled substance." Id. At the federal level, Section 841 states that "it shall be unlawful for any person knowingly or intentionally . . . to . . . possess

Crim. No. 23-353-23 (GMM)
Page - 33 -

with intent to . . . distribute . . . a controlled substance." 21 U.S.C. § 841(a)(1). "To prove possession with the intent to distribute, the Government [is] required to show that [the defendant] knowingly and intentionally possessed [the charged substance], and did so with the intent to distribute it." United States v. Rodriguez, 392 F.3d 539, 545 (2d Cir. 2004). "Conversely, no agreement need be proven to secure a conviction for a substantive drug offense under 21 U.S.C. § 841(a)(1)." United States v. Fornia-Castillo, 408 F.3d 52, 55 (1st Cir. 2005).

In examining the elements of Article 406 and comparing them with the elements of Section 841, the Court notes that the elements are different. Whereas Section 841 requires proof of actual possession, Article 406 does not. Moreover, Article 406 requires proof of a conspiracy, whereas Section 841 does not. Indeed, it has long been established that "conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes," Lanoue, 137 F.3d at 662, because "the agreement to do the act is distinct from the [completed] act itself." United States v. Felix, 503 U.S. 378, 390-91 (1992) (internal quotation marks omitted) (adhering to line of cases holding that separate prosecutions for conspiracy and for underlying substantive offenses do not violate the Double Jeopardy Clause). To boot, for Article 406 an agreement suffices, yet for Section 801 an overt

Crim. No. 23-353-23 (GMM)
Page - 34 -

act is required. *See* _id._ Considering that each statute contains
different elements, under the Blockburger precedent, the offenses
are issue are distinct and separate – and a claim of double
jeopardy is not applicable. *See* Blockburger, 284 U.S. at 304.[3]

In sum, the record shows that it is more likely than not that
the conspiracies charged against Rivas under Article 406 and
Section 846 are distinct. Namely, there are hardly any
circumstances that link the two conspiracies here: there is a
minimal an overlap in time; a minimal overlap in location only as
to Manatí; no intertwined objectives; and with the facts and
evidence before it, the Court cannot reasonably infer that there
is a high likelihood of the same underlying criminal organization
operating out of the same housing project because no close
connections between these other factors show that the federal
charge is for the same offense as the Puerto Rico one. *See supra*
Sections III.A.1–5.

Thus, upon weighing the First Circuit factors outlined above,
and upon considering the totality of the circumstances presented
by this case, the Court finds that Rivas has failed to carry his
burden of proving that there exists a nonfrivolous double jeopardy

---

[3] Ultimately, this final factor of five-part test weighs against Rivas as to
the dismissal of Counts Two through Five of the Indictment. Importantly, the
Puerto Rico case did not charge Rivas with the modality of possession with
intent to distribute in a protected location, like a public housing facility.
*See* (Docket No. 1422-1). This also differentiates the Puerto Rico conspiracy
from the one charged before this Court.

Crim. No. 23-353-23 (GMM)
Page - 35 -

claim. "Without the benefit of the facts and evidence unearthed by a full-fledged trial and with only a hue available from the rainbow of facts and evidence on which the [G]overnment will eventually rely," Laguna-Estela, 394 F.3d at 58, it must be concluded that Rivas has not shown that the offenses brought against him in the *Indictment* are the same to which he already pleaded guilty in the Puerto Rico case.

Therefore, neither the dismissal of the conspiracy offense included in Count One, nor the dismissal of the substantive drug offenses for possession with the intent to distribute in Counts Two to Five may be dismissed on double jeopardy grounds.


C.    Count Six: 18 U.S.C. § 924(c)(1)(A)

Rivas argues that the dismissal of Count One's conspiracy offense and of Counts Two to Five's substantive drug offense charges would necessarily lead to the dismissal of Count Six - which charges Rivas with possession of firearms in furtherance of a drug trafficking crime, in violation of Section 924. (Docket No. 3 at 21). According to Rivas, in absence of the 'conspiracy' offense or the underlying predicate drug offenses, Count Six cannot stand.

Rivas, nonetheless, is wrong as to this contention. Even assuming *arguendo* that the Court had dismissed all the drug

Crim. No. 23-353-23 (GMM)
Page - 36 -

offenses, which it has not, this does not impact the Section 924 count.

As previously discussed, the Supreme Court has held that separate prosecutions for conspiracy and for underlying substantive offenses do not violate the Double Jeopardy Clause. Felix, 503 U.S. at 390-91. Since the Court has held that the substantive drug offenses survive dismissal, for the same reasons the Section 924 offense included in Count Six survives.

The plain language of the statute demonstrates as much. *See* 18 U.S.C. § 924(c)(1)(A). To establish that a defendant possessed a firearm "in furtherance of" a drug trafficking crime, the Government must prove beyond a reasonable doubt that the defendant "1) committed a drug trafficking crime; 2) knowingly possessed a firearm; and 3) possessed the firearm in furtherance of the drug trafficking crime." United States v. Ramirez-Frechel, 23 F.4th 69, 74 (1st Cir. 2022) (*quoting* United States v. Pena, 586 F.3d 105, 112-13 (1st Cir. 2009)). Section 924 defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*)" or the Maritime Drug Law Enforcement Act (46 U.S.C. Ch. 705). 18 U.S.C. § 924. The statute explicitly states that possession of a firearm in furtherance of a drug trafficking crime applies to crimes "for which the person

Crim. No. 23-353-23 (GMM)
Page - 37 -

**may be prosecuted** in a court of the United States." Id. (emphasis added).

As stated by several United States Courts of Appeals, "[b]y its plain language, section 924 does not require that a defendant be convicted of, or even charged with, the predicate offense to be found guilty of using or carrying a firearm in relation to the predicate offense." Forteza-Garcia v. United States, No. 20-CV-1145(RAM), 2021 WL 784875, at *6 (D.P.R. Feb. 26, 2021) (*quoting* United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)); *see also* United States v. Vidal-Reyes, 562 F.3d 43, 55 n.9 (1st Cir. 2009) ("Our sister circuits have held in the context of 18 U.S.C. § 924(c) that that statute 'does not require that a defendant be convicted of, or even charged with, the predicate offense to be found guilty of using or carrying a firearm in relation to the predicate offense.'") (internal citation omitted); United States v. Munoz-Fabela, 896 F.2d 908, 911 (5th Cir. 1990) ("[I]t is only the fact of the offense, and not a conviction, that is needed to establish the required predicate."); Harris v. United States, 2013 WL 12450621, at *3 (M.D. Fla. 2013) ("[A] defendant does not have to be convicted of, or even charged with, the predicate offense to be found guilty of using or carrying a firearm in relation to the predicate offense. Section 924 requires only that the crime of

Crim. No. 23-353-23 (GMM)
Page - 38 -

violence be one that 'may be prosecuted.'") (internal citation omitted).

Consequently, Count Six may not be dismissed.


**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Rivas' *Amended Motion to Dismiss*.


IT IS SO ORDERED.

In San Juan, Puerto Rico, on December 16, 2025


/s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE